OPINION OF THE COURT
Muriel Shaff Hubsher, J.
*781 The defendant moves to dismiss superior court information No. 6635/93 pursuant to CPL 380.30 (1) for loss of jurisdiction for failing to sentence the defendant without unreasonable delay.
Background
On or about June 3, 1993, the defendant was arrested, printed by the New York City Police Department, and arraigned on the charge of criminal sale of a controlled substance in the third degree. The defendant gave a false name, Luis Alberto. He was assigned NYSID No. 7426225Y, which showed this as his first arrest.
On June 9, 1993, as a result of a plea bargain, the defendant pleaded guilty to attempted criminal sale of a controlled substance in the third degree, a class C felony, in satisfaction of SCI No. 6635/93. The defendant was promised that he would receive a one-day split sentence (one-day jail and five years’ probation) — a sentence only available for a first-time offender. The defendant was released on his own recognizance.
Unbeknown to the court and the People, the defendant, whose real name is Antonio Serrano, at that time was a predicate felon. He had numerous prior arrests and numerous different NYSID numbers. In fact, just two days before the defendant’s arrest in the instant matter, he had absconded from a temporary work release program, in which he had participated under a different name and of course a different NYSID number.
On July 27, 1993, the date of sentencing, the defendant did not appear in court and a warrant was issued.
On September 15, 1993 he was returned as an absconder from temporary work release to the Downstate Correctional Facility where he remained for approximately three years. As the names and NYSID numbers were different than that on the warrant in the case before the Bar, no one was aware that the bench warrant was in effect. On June 6, 1995, he was paroled. On May 29, 1996, his parole was revoked and he was returned to complete his sentence of three to nine years.
In 1995, it was discovered in a routine check by the court’s Identification Unit that the defendant Luis Alberto had been issued 5 different NYSID numbers, had 15 different aliases, 4 different Social Security numbers, 9 different dates of birth and 10 different addresses.
It is patently clear that this defendant over and over again sought to hide his true identity by offering false information in order to obfuscate his myriad contacts with the justice system.
*782 The Identification Unit consolidated the rap sheets and as is the practice, it was simply attached by a clerk to Luis Alberto’s file in the instant case. No notification was given to any party.
In what appears to this court to be June of 1996, a warrant was forwarded to the Ulster Correctional Facility in upstate New York with notification that an inmate in the prison named Antonio Serrano was also Luis Alberto and wanted in the instant matter.
The People contend that it was not until a month later, in July 1996, that a record coordinator in Attica contacted the District Attorney’s office in Kings County with the information that Antonio Serrano, an inmate in that facility, had an active 1993 bench warrant under the name Luis Alberto. The District Attorney’s office, after determining that Serrano and Alberto were the same person, prepared an order to produce bringing Alberto back to this court on August 28, 1996 for sentencing.
When the defendant first appeared in this court in August 1996 a probation report update was ordered despite defendant’s denial on that and subsequent court appearances that he was Luis Alberto, maintaining his name was Serrano. When he finally got down to admitting his dual identity, the defendant, obviously venting his anger, began to harass his lawyer, demanding that a new attorney be assigned to him.
The court was unwilling, without cause, to reassign a lawyer for the defendant and his attorney requesting adjournments on September 6, 1996 to September 25, 1996 and another adjournment until October 30, 1996 eventually collected sufficient information to initiate this motion on November 1996, having developed what he believed to be a legal basis under CPL 380.30 (1) to dismiss for unreasonable delay.
Conclusions of Law
CPL 380.30 (1) provides that the sentence of a criminal defendant "must be pronounced without unreasonable delay” otherwise a sentencing court may be divested of its jurisdiction over the defendant (see, People ex rel. Harty v Fay, 10 NY2d 374 [1961]). However, the mere passage of time is not the sole criteria for loss of jurisdiction (see, People v Drake, 61 NY2d 359, 364 [1984]).
In certain circumstances, delay, even lengthy delay, is excusable. Where such delay is caused by the "conduct of the defendant” which frustrates the entry of judgment, it is excusable *783 and sentence can be imposed (People v Drake, supra, at 366, citing Matter of Weinstein v Haft, 60 NY2d 625 [1983], and (Matter of Root v Kapelman, 67 AD2d 131 [1st Dept 1979]), but where such delay is "the result of judicial- or prosecutorial negligence or mistake”, it is inexcusable and the matter must be dismissed (see, People v Drake, supra, at 366).
It is the defendant’s contention that his delay in sentence was caused by prosecutorial negligence in not performing their duty to locate him when he was at large and when he was in a number of upstate facilities (Ulster, Attica and Wyoming Correctional Facilities) after the warrant had been ordered in 1993.
He offers as support for his position two documents. The first is a copy of a request for the lodging of a warrant sent to the commanding officer at Ulster Correctional Facility, notifying them that Luis Alberto, housed in that facility under the name Antonio Serrano, was wanted in Kings County. The notification is on a form and is typed. Clearly the date on the top of the page is June 11, 1996. On the bottom of the page is a handwritten date which is interpreted by defendant as reading June 11, 1994. This interpretation of the handwritten number is not apparent to the court. With a stretch of the imagination, it could be "94” but it appears much more likely to be "96”. More definitive is the receipt ink stamped on the right-hand bottom of the page with the date June 1996.
This corresponds with the People’s contention that they did receive notice of the defendant’s incarceration a month later in July 1996 whereupon an order to produce was issued. The date of the handwritten notation is based on conjecture and as detective work is not the duty of the court, without more convincing evidence, the court must rely on the date typed on the head of the form.
The second document upon which the defendant buttresses his motion for dismissal is the NYSID consolidation with a cover sheet noting the revised NYSID number for Luis Alberto (Umberto Serrano, Eramus Garay, Antonio Alvero, and Antonio Salvero among other names used by the defendant). This is the document that was attached to the defendant’s court file.
The consolidation report is clearly dated January 9, 1995, which the defendant argues is the date on which the District Attorney knew or should have known of his whereabouts and should have made efforts to produce him for sentencing.
The Identification Unit which discovered the existence of a multiplicity of NYSIDs for the defendant was not part of the *784 District Attorney’s office, nor was it under their control. The People state unequivocally that they did not receive notice of this consolidation and they did not learn of the defendant’s whereabouts until July of 1996.
Based on the above circumstances, the only issue before this court is whether the People must be charged with constructive knowledge of the defendant’s whereabouts so long as he is incarcerated in a State correctional facility.
It has been held that the People are obligated to exercise due diligence when a warranted defendant is actually incarcerated (see, People v Reyes, 214 AD2d 233 [1st Dept 1995]). The rationale given is that the People "can produce the incarcerated defendant with little effort; and that defendant is incapable of appearing in court by his own effort” (People v Reyes, supra, at 236).
It has also been held that when a defendant absconds, due diligence by the People is no longer required (see, Matter of Root v Kapelman, 67 AD2d 131, supra; People v Davidson, 158 AD2d 317 [1st Dept 1990]). One should note that the literal dictionary meaning of abscond is "to hide away; to depart secretly and hide oneself’ (Webster’s New Collegiate Dictionary [1975]). When a defendant has repeatedly offered false names, birth-dates, and addresses it is evident not only of his chicanery, but of his intent and ability, of "beating the system”. Clearly, if a defendant, when entering prison, with calculated effort successfully hides all traces of his true existence he is "absconding” — that is hiding in the prison itself. The concept that the People can easily locate a defendant who has given a myriad of false information is untenable.
Furthermore, as to his being incapable of appearing by his own efforts, it is apodictic that one word from him as to his true identity would bring him in court with uncalculable speed.
It is inconsistent with the dictates of common sense to allow this defendant, Alberto, Serrano, or whatever his name is at any given arrest, to succeed in his game playing with the law. It would frustrate the legislative intent of mandatory jail sentences for guilty persons as it would frustrate society’s need for comprehensible and sensible determinations by the courts.
In truth, the case of Luis Alberto or Antonio Serrano is the classic example of someone who has been hoisted by his own petard.
*785 The defendant’s motion is denied. Jurisdiction to sentence the defendant has not been lost by the court which will proceed without further delay.